# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| OFIR VENTURA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N25C-01-109 CLS |
| CIRCLE INTERNET FINANCIAL, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 23, 2025
Decided: August 18, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendant's Motion to Dismiss,*
**DENIED**

Mark M. Billion, Esquire of BILLION LAW, *Attorney for Plaintiff*.

Shannon E. German, Esquire and Lauren DeBona Zlotnick, Esquire of WILSON SONSINI GOODRICH & ROSATI, P.C., *Attorneys for Defendant*.

**SCOTT, J.**

This dispute implicates the budding field of cryptocurrency. Plaintiff seeks to recover an erroneous transfer of his stablecoins from a company that issues such coins. The company now moves for dismissal. For the reasons below, that motion is **DENIED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. THE PARTIES

Plaintiff, Ofir Ventura, is a resident of Nevada.[2]

Defendant Circle Internet Financial, LLC ("Circle") is a Delaware limited liability company.[3] As parts of its business model, Circle issues "USDC," a form of cryptocurrency, and operates as the sole issuer of USDC tokens.[4]

### B. THE USDC AND THE ERRONEOUS TRANSFER

USDC is a fiat-backed stablecoin that maintains a one-to-one value ratio with the United States dollar.[5] Circle holds United States dollar reserves equal to the amount of USDC in circulation, maintaining these reserves in segregated accounts.[6]

---

[1] All facts are drawn from the well-pled allegations in the Second Amended Complaint and are assumed to be true for the purposes of this Motion to Dismiss. *See* D.I. 5, Second Amended Complaint ("SAC").

[2] *Id.* ¶ 1.

[3] *Id.* ¶ 2.

[4] *Id.*; *Id.* at 5.

[5] *Id.* ¶ 23–24.

[6] *Id.*

On April 27, 2022, Plaintiff obtained 511,435 USDC tokens.[7]  One day later, Plaintiff sought to transfer all those tokens to his Ethereum blockchain wallet address: 0x6e2Bfa169667C0D9aD**b**DE8D532a22E05B72E8911 through a private fund managed by non-party Kyle Carlston.[8]  On April 30, 2022, Carlston sent the USDC tokens to the wrong Ethereum blockchain address: 0x6e2Bfa169667C0D9aD**D**DE8D532a22E05B72E8911 (the "Incorrect Wallet").[9]  The erroneous address differed from Plaintiff's intended address by one character—a "D" instead of a "b" in the middle of the address string.

The 511,435 USDC tokens were successfully transferred to the Incorrect Wallet, but they are purportedly inaccessible to any party.[10]

## C. PROCEDURAL HISTORY

On December 8, 2023, Plaintiff filed an action in the Delaware Court of Chancery against Circle and unidentified Doe defendants.[11]  On November 4, 2024,

---

[7] *See* Plaintiff Ofir Ventura's Opposition to Defendant Circle Internet Financial, LLC's Motion to Dismiss at 2, D.I. 13 ("Answering Br.").

[8] SAC ¶ 16 (emphasis added).

[9] *Id.* ¶ 17 (emphasis added).

[10] *Id.* ¶¶ 19, 70. *See also* Defendant Circle Internet Financial, LLC's Opening Brief in Support of its Motion to Dismiss the Second Amended Complaint at 18, D.I. 10 ("Opening Br.").

[11] Opening Br. at 7; *see also Ventura v. Circle Internet Fin., LLC, et al.*, C.A. No. 2023-1227-NAC, D.I. 1, 8.

the Court of Chancery stated it lacked subject matter jurisdiction over the claims.[12] The parties then stipulated to transfer the action to this Court, and Plaintiff so transferred on January 2, 2025.[13] Plaintiff filed the Second Amended Complaint (the "Complaint") on February 11, 2025, removing the unidentified Doe defendants and seeking claims against Circle for unjust enrichment and replacement of lost or destroyed securities certificates.[14]

Through these claims, Plaintiff seeks the reissuance of 511,435 USDC tokens or payment of $511,435.[15] Circle moves to dismiss the Complaint in its entirety for failure to state a claim under Rule 12(b)(6) ("the Motion").[16] Plaintiff opposes.[17] Briefing on the Motion has been completed,[18] and the Court addresses this Motion.

---

[12] *See Ventura v. Circle Internet Fin., LLC, et al.*, C.A. No. 2023-1227-NAC, D.I. 45.

[13] *See id.*, D.I. 46; *see generally* D.I. 1.

[14] *See generally* SAC; *id.* at 11–14.

[15] *Id.* at 14.

[16] *See* Opening Br.

[17] *See generally* Answering Br.

[18] *See generally* Opening Br., Answering Br., Reply Brief of Defendant Circle Internet Financial, LLC in Further Support of Its Motion to Dismiss the Second Amended Complaint, D.I. 14 ("Reply Br.").

## STANDARD OF REVIEW

Upon a motion to dismiss under Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[19]  The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[20]  But "it is appropriate . . . to give the pleader the benefit of all reasonable inferences that can be drawn from its pleading."[21]

## DISCUSSION

The Complaint asserts two counts: Count I for Unjust Enrichment and Count II for Replacement of Lost or Destroyed Securities Certificate Under 6 *Del. C.* § 8-405.[22]  The Court addresses each in turn.[23]

---

[19] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).

[20] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[21] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *2 (Del. Super. Sept. 25, 2015) (quotation omitted).

[22] *See* SAC at 11–14.

[23] It's unclear the import of Plaintiff's non-joinder of the unknown wallet holder.  While Plaintiff characterizes the wallet holding the 511,435 USDC tokens at issue as "ownerless and inaccessible," the tokens continue to exist at that specific address.  SAC at 2; *id.* ¶ 70.  As such,

## A. Count I Survives.

Count I asserts Circle was unjustly enriched as a result of the transfer "by accident" to the Incorrect Wallet.[24]  At the outset, Circle argues USDC's Terms and Conditions ("Terms") govern the parties' relationship and preclude the unjust enrichment claim.[25]  Plaintiff counters that no contractual relationship exists between the parties, because he "was never eligible to open a Circle Mint account" and "has never transacted directly with Circle under the USDC Terms. . . ."[26]  At this stage, the Court must draw all reasonable inferences in Plaintiff's favor.[27]  Although the Terms are publicly available, Plaintiff never transacted directly, nor owned an account, with Circle.  Accordingly, it is reasonably conceivable that Plaintiff did not assent to the Terms.  The Court turns to the elements of Unjust Enrichment.

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property against the fundamental principles of justice or equity and good conscience.'"[28]  To state a claim for unjust enrichment, one must

---

the Doe defendants could hypothetically constitute an important party depending upon the requested relief.  Nevertheless, the Court must adjudicate the case before it.

[24] Answering Br. at 2; SAC at 11–12.

[25] Opening Br. at 11–12.

[26] Answering Br. at 5–8.

[27] *Olenik v. Lodzinski*, 208 A.3d 704, 714 (Del. 2019) (citing *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 100 (Del. 2013)).

[28] *State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 390 (Del. 2023) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).

establish: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy at law."[29] "The absence of an adequate remedy at law is required only if an unjust enrichment claim is brought in the Court of Chancery and there is no other independent basis for equitable jurisdiction."[30]

The parties mainly dispute elements one, three, and four. Plaintiff alleges Circle benefits from the USDC sitting indefinitely in an inaccessible wallet because Circle earns interest on the corresponding reserve funds while never having to honor redemption requests.[31] Circle disputes this characterization, arguing it maintains required reserves regardless of token placement and derives no special benefit from tokens in dead wallets.[32] Circle also argues there is no absence of justification and it "has gained nothing because of Carlston's mistake."[33]

At this preliminary stage, it is premature to conclude no unjust enrichment occurred. Discovery may reveal more about (1) whether Circle earns interests on reserves tied to USDC in dead wallets; (2) whether there's a relationship between

---

[29] *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 728 (Del. Ch. 2023) (citing *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998)).

[30] *State ex rel. Jennings*, 299 A.3d at 391.

[31] SAC ¶¶ 43–46; Answering Br. at 8–9.

[32] Opening Br. at 13–15; Reply Br. at 9–14. Circle argues that USDC must be backed 1:1 with U.S. dollars held in reserves, and users of USDC have no right to the reserves. Reply Br. at 11.

[33] Reply Br. at 9; Opening Br. at 15.

the erroneous transfer and the interest earned; and (3) whether retaining such interest is justified. With all inferences drawn in Plaintiff's favor, Count I states a plausible claim for unjust enrichment. Whether this theory ultimately proves correct requires factual development beyond this juncture.

## B. COUNT II SURVIVES.

Alternatively, Count II asserts Plaintiff is entitled to replacement of the USDC under 6 *Del. C.* § 8-405, the Delaware Uniform Commercial Code ("UCC"), which provides remedies for owners of certificated securities:[34]

> (a) If an owner of a certificated security, whether in registered or bearer form, claims that the certificate has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificate if the owner: (1) so requests before the issuer has notice that the certificate has been acquired by a protected purchaser; (2) files with the issuer a sufficient indemnity bond; and (3) satisfies other reasonable requirements imposed by the issuer.[35]

A "'certified security' means a security that is represented by a certificate."[36] Section 8-102 defines "security," except as otherwise provided in Section 8-103, as

> an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer:
> (i)     which is represented by a security certificate in bearer or registered form, or the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer;

---

[34] SAC at 12–14.

[35] *Id.*; 6 *Del. C.* § 8-405.

[36] 6 *Del. C.* § 8-102(a)(4).

(ii)    which is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations; and

(iii)   which:

(A) is, or is of a type, dealt in or traded on securities exchanges or securities markets; or

(B) is a medium for investment and by its terms expressly provides that it is a security governed by this Article.[37]

The parties' dispute centers on whether USDC satisfies the UCC's multi-pronged definition of "security." Circle argues USDC does not meet the definition because no obligation exists absent a Circle Mint account, the tokens lack necessary divisibility, and USDC does not function as securities because it is not intended as an investment product.[38] Plaintiff contends USDC represents Circle's obligation to maintain reserves and honor redemptions, is divisible into a class or series, and satisfies the "functional test" through trading on digital platforms like Coinbase.[39]

The parties also dispute whether USDC constitutes a "certificated" security. Circle maintains that blockchain-recorded transactions are "essentially a book entry," rendering USDC uncertificated.[40] Plaintiff argues "certificate" is not limited to paper form, and USDC tokens qualify as certificated securities in "bearer" form.[41]

---

[37] 6 *Del. C.* § 8-102(a)(15).

[38] Opening Br. at 17–23.

[39] Answering Br. at 11–14.

[40] Opening Br. at 23–25.

[41] Answering Br. at 14–17.

Based on the limited record at the pleading stage, it is unclear whether USDC is a security under the meaning of Article 8. The parties' briefs highlight several open questions that warrant further discovery before the Court can resolve this dispute. For example, Article 8 does not define "securities exchanges" or "securities markets."[42] It is also unclear whether USDC is, or is of the type, *dealt in or traded on* securities exchanges or securities markets. "Certificate" is similarly undefined in the UCC. Thus, it is at least reasonably conceivable that a "certificate" need not be in physical form. Whether cryptographically digital tokens meet the "certificated" requirement requires factual development beyond the pleading stage.

Thus, Count II survives.

## CONCLUSION

At this early stage, and drawing all reasonable inferences in nonmovant's favor, the Court cannot conclude as a matter of law that Plaintiff cannot "recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[43] Thus, Circle's Motion to Dismiss is **DENIED**.

---

[42] The parties did not brief on the issue of whether the "securities exchange" or "securities markets" are those listed on the SEC as the National Securities Exchanges. *See National Securities Exchanges*, U.S. SECURITIES AND EXCHANGE COMMISSION, http://www.sec.gov/about/divisions-offices/division-trading-markets/national-securities-exchanges (last updated May 21, 2024).

[43] *Carroll v. Nationwide Mut. Fire Ins. Co.*, 2008 WL 2583012, at *2 (Del. Super. June 20, 2008) (citing *Spence v. Funk,* 396 A.2d 967, 968 (Del. 1978)).

**IT IS SO ORDERED.**

/s/ Calvin Scott
Judge Calvin L. Scott, Jr.